NATIONAL PACIFIC INSURANCE CO., LTD., Petitioner

v.

COMMISSIONER OF THE AMERICAN SAMOA
GOVERNMENT'S WORKMEN'S COMPENSATION
COMMISSION, Respondent

SIONE KOLO, Intervenor

High Court of American Samoa
Trial Division

CA No. 37-92

July 23, 1992

Before KRUSE, Chief Justice, VAIVAO, Associate Judge, and
AFUOLA, Associate Judge.

Counsel:     For Petitioner, John L. Ward, II
             For Respondent, Michael R. O'Connor, Assistant
             Attorney General

15

Intervenor Sione Kolo was seriously injured on September 5, 1990, in the course of his employment for Samoa Maritime. All parties agree that the injury is covered by compensation benefits under the Workmen's Compensation Act, A.S.C.A. §§ 32.0501 *et seq.* Intervenor's treating physician has recommended off-island medical care. After a formal hearing, the Workmen's Compensation Commission ("Commission") concluded in its Findings of Fact, Conclusions of Law, and Decision and Order filed on March 3, 1992, that Samoa Maritime and its workmen's compensation insurer, petitioner National Pacific Insurance Co. ("NPI"), "are responsible for the provision of such medical and hospital services, treatment and supplies required by Claimant, which includes the making of arrangements for such necessary off-island medical treatment." *Id.* at 6. NPI now seeks judicial review of that decision pursuant to the provisions of A.S.C.A. § 32.0652. Although NPI concedes that it must cover medical treatment and travel expenses for the off-island care, including accommodation and per diem, it claims that intervenor must first go through the off-island medical referral procedure outlined in A.S.A.C. §§ 11.0310 *et seq.* and that the LBJ Tropical Medical Center ("LBJ") must make the arrangements for intervenor's off-island medical treatment. Additionally, NPI argues that the government cannot charge different rates for insured and uninsured patients.

Respondent and intervenor, on the other hand, both raise the issue of whether LBJ is within the Commission's jurisdiction in the first place; they claim that it is not and that the Commission therefore cannot order LBJ to process intervenor through its off-island medical referral procedure.

Intervenor further alleges that NPI intends to seek reimbursement for the costs which it incurred in making the off-island arrangements, and intervenor therefore seeks a declaration to the effect that he is not responsible for such costs, as well as a permanent injunction to enjoin NPI from filing suit against him to recover such costs. Intervenor also prays for his attorney's fees and costs since June 1991.

## STANDARD OF REVIEW

The courts have given considerable deference to administrative decisions involving an agency's construction of its governing statute and

regulations. Thus, in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984), the Supreme Court said that

> [i]f . . . the court determines [that] Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, [footnote omitted] as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent and ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

In *Wilderness Society v. Morton*, 479 F.2d 842, 864 (D.C. Cir. 1973), the Court of Appeals noted "the settled principle that administrative interpretations are entitled to great weight" but went on to add that if the court deems the interpretation to be inconsistent with a statutory mandate or to frustrate congressional policy, the court need not approve the interpretation. Deference to the agency's interpretation does not mean rubber-stamping its decisions. Additionally, the court noted that "[t]here is a presumption against construing a statute so as to render it ineffective." *Id.* at 855.

These standards have been effectively incorporated in the Workmen's Compensation Act. A.S.C.A. § 32.0652(a) provides that, "[i]f not in accordance with law, a compensation order may be suspended or set aside, in whole or in part." This provision limits the court, which "can set aside the Commission's decision only if it was 'not in accordance with law.'" *Continental Ins. Co. v. Workmen's Compensation Comm'r of Am. Samoa*, 7 A.S.R.2d 105, 107 (1988), *aff'd*, 8 A.S.R.2d 152 (App. Div. 1988). On issues of fact, the right to appeal the Commission's decision "does not entitle the losing party to a new trial before a new tribunal. As long as reasonable people could differ on the facts presented to the Commission, its decision will be upheld on appeal." *Id.*

Thus, if the Commission's interpretation is permissible under the statutes and regulations, the Court should defer to the Commission's decision. If, however, the Commission's construction is inconsistent with a statutory mandate, frustrates legislative policy, or renders the statutes or regulations ineffective, the Court must set aside the decision. *See also Morton v. Ruiz*, 415 U.S. 199, 237 (1974).

## DISCUSSION

### Off-Island Referral Procedures

#### A. Different Rates

The American Samoa Administrative Code provides that "[t]he medical referral committee will meet to review each proposed referral case, and . . . will recommend approval or disapproval according to policies, procedures, and criteria governing this process." A.S.A.C. § 11.0312(b). As the Commission found, one of these policies is that, if a patient is covered by workmen's compensation insurance, the patient will not go through the off-island medical-referral procedures. Instead, the doctor advises the employer or insurer in writing of the recommendation that off-island treatment is essential and sends a copy to the patient's attorney, if he has one. Upon receipt, the employer or insurer makes any necessary arrangements for off-island treatment.

The hospital also charges different rates for insured and uninsured patients, under A.S.A.C. §§ 11.0303-11.0304 (insured), adopted under the authority of Rev. Const. Am. Samoa Art. IV, § 6, and A.S.A.C. §§ 11.0301-11.0302 (uninsured), adopted under the authority of A.S.C.A. §§ 13.0601-13.0602. NPI argues that the distinctions in the administrative rules requiring workmen's compensation insurers to be charged different rates than those the injured patient would be charged if not covered by workmen's compensation insurance are "in conflict with the laws of American Samoa," Rev. Const. Am. Samoa Art. IV, § 6, and are not, as the administrative code states, *authorized* by this section of the Revised Constitution.

The American Samoa Code Annotated provides that all fees and other charges for treatment under the Workmen's Compensation scheme "shall be limited to such charges as prevail in the same community for similar treatment of injured individuals of like standard of living, and shall be subject to regulation by the commissioner." A.S.C.A. § 32.0619(f). It also provides that "[t]he employer shall furnish, where no other provision is made, such medical [and] . . . hospital service . . . as the nature of the injury or the process of recovery may require." A.S.C.A. § 32.0619(a). NPI asserts that the different rates established by the administrative code conflict with the limits established by these statutes.

18

The "conflict" is claimed to arise because the authorizing statute prescribes "reasonable" charges for the use of government facilities, and the Workmen's Compensation Act "expressly limit[s]" fees and other charges for medical treatment to those prevailing for "similar treatment of injured individuals of like standard of living." NPI's Opening Brief at 5 (citing A.S.C.A. § 32.0619(f)). The thrust of the argument is that "no statutory clear authority to charge different rates or provide different procedures based upon insurance coverage, for patients otherwise statutorily entitled to 'free' medical care, is indicated in the language of these statutes." NPI's Opening Brief, at 5. Yet NPI never argues that the rates charged are not "reasonable," thus the conflict with the statutory authority actually does not exist.

Further, this alleged conflict is not at issue in this appeal. LBJ has simply refused to process intervenor through the off-island referral procedures, and therefore, no charges, whether at the insured or uninsured rate, are incurred. Thus, any difference in charges is not relevant in the present case.

### B. Governing the Process

The Commission's decision determined that A.S.C.A. § 32.0619(f), which limits workmen's compensation charges, does not mandate that workers covered under the statute and who require off-island treatment must be processed by LBJ. NPI disputes this determination, claiming that "LBJ may not treat patients differently based solely upon the fact that the patient's charges and fees will be paid pursuant to the Workmen's Compensation Act." NPI's Opening Brief, at 6.

The key issue is whether the A.S.A.C. provision allowing "policies, procedures and criteria [to] govern[] this process" of off-island referral can encompass an unwritten policy that those fully covered by insurance will not go through the process at all; is this "governing" the process? There is no clear statutory mandate requiring anyone to go through the off-island referral procedures. NPI makes much of the off-island referral committee's duty to review each proposed referral case, but this duty does not arise until "[t]he chief of service immediately concerned fills out an off-island medical referral form and sends it to the office of the director of health," A.S.A.C. § 11.0312(a), thus creating a "proposed referral case," A.S.A.C. § 11.0312(b). Presumably, such a form will be filled out only when the chief of service anticipates that LBJ will be paying at least part of the cost of off-island medical

19

treatment. If anything, this equivocality of the statute lends itself to supporting the Commission's decision, since it would be difficult to find that the decision is not in accordance with law when the law does not have specific requirements.

This policy actually does govern the process by serving as a valid screen to exclude people from the process and its benefits--medical care at government expense--and not to "exempt" them from "completing the Off-Island Medical Referral requirements," as NPI claims. NPI's Opening Brief, at 9. The primary purpose of the procedure is to ensure that only those who truly need the off-island care receive it at LBJ's expense, and the exclusions serve to keep those who will not receive the care at LBJ's expense out of the process, thus conserving time and resources. This screen functions in the same way as the requirement that a patient qualify by contract, residence, or nationality for free medical care before he can be considered by the off-island referral committee; unless the patient meets the requirement, the committee does not consider the case. Yet clearly the qualifications "govern" the process even though they serve to exclude people from the process. The only difference is that one is a promulgated policy while the other is not. This exclusion does not render the statute ineffective or frustrate the legislative purpose behind the statute.

NPI claims that A.S.A.C. § 11.0311(b) "acknowledges that insured, eligible patients will still go through the off-island referral process," because it states that the American Samoa Government ("ASG") will only be responsible for any amounts not covered by insurance, including workmen's compensation insurance. But nothing *requires* those who are insured to go through the process of off-island medical referral; the provisions of both A.S.A.C. § 11.0311(b) and § 11.0318, which permits a patient to choose private care but limits the government's monetary responsibility for that care to the Tripler Army Medical Center's rate, demonstrate that the primary concern of the off-island referral procedure is the government's expenditure of funds. As Respondent and intervenor argue, the off-island referral process is only necessary for those who wish LBJ to pay some part of the costs of off-island care. Because intervenor's injury is entirely covered by workmen's compensation benefits, LBJ will not be paying any part of the costs of off-island care; thus, the off-island medical referral process is not a necessary step for intervenor.

NPI also argues that it is only required under A.S.C.A. § 32.0619(a) to furnish medical care where no other provision is made, and

20

that since the Commission clearly found that intervenor would be entitled to free medical care, the Commission's decision is not in accordance with law. It is urged that others of like standard of living receive "free" off-island medical care and have the arrangements for off-island care made by LBJ. This argument, however, overlooks the administrative rule that ASG, and therefore LBJ, is only responsible for the costs of off-island medical referral not covered by workmen's compensation under A.S.A.C. § 11.0311(b). Because NPI is responsible for the entire cost of intervenor's treatment, it is not entitled to receive the free services that LBJ provides at government expense.

This policy serves as part of a sensible method to effect off-island medical care for those covered by workmen's compensation. Although those covered by workmen's compensation may often include those who would be entitled to free medical treatment, the two groups are distinct. The example given by respondent of a foreign national who works in American Samoa and would not be entitled to LBJ-sponsored off-island care, but would be entitled to workmen's compensation, illustrates that the two procedures were not meant to mesh. Requiring all workers to go through the off-island medical referral procedures would prevent some workers, who need off-island care and qualify to have workmen's compensation pay for it, from qualifying for and obtaining this care. The policy also allows the employer or insurer to begin making the necessary arrangements immediately after the need for off-island care becomes apparent, while permitting the employer to challenge the necessity of such off-island care through a Commission hearing very early in the process.

Additionally, to require strict compliance with the LBJ off-island medical-referral procedures would require LBJ to obligate funds for travel and medical care, expenses which even NPI acknowledges it must pay. This, too, shows that the two procedures were not meant to be complementary parts of a single procedure but instead address entirely separate concerns.

Finally, NPI's misgivings about whether off-island care is warranted in cases covered by workmen's compensation insurance can be and has in this case been addressed through a workmen's compensation hearing and order. This procedure serves as a safeguard in questionable cases to ensure that only those who truly need off-island care are so referred at the insurer's expense.

21

The off-island medical-referral committee is, as respondent and intervenor urge, primarily set up to ensure that LBJ funds are only expended when necessary. Because such funds will not be spent in cases covered by workmen's compensation insurance, this analysis by the referral committee is not necessary. Thus, in cases covered by workmen's compensation insurance, the policy of not consulting the off-island medical-referral committee is a logical and reasonable policy. The statute is not rendered ineffective, no legislative policy is frustrated, and the non-consultation policy is not inconsistent with a statutory mandate. Additionally, the other inconsistencies that would result from following the off-island referral procedures make it clear that the policy should be considered a permissible interpretation of the governing statutes and regulations and as such is entitled to deference by the Court. Given this deference, the policy and the Commission's decision must be upheld.

In view of the conclusion we have reached, we need not consider the issue of jurisdiction over LBJ nor address the merits of intervenor's petition for declaratory and injunctive relief. It remains for us to consider intervenor's request for attorneys fees and costs. There was no basis set out for this claim, and the same is denied.

It is so ordered.